Ladies and gentlemen, our first case for argument this morning is United States v. Pfeiffer. Ms. Vick. May it please the Court. Please proceed, Ms. Vick. Counsel. Your Honors, the simple fact in this case is that there was not probable cause to search my client's apartment in November of 2013. There was not probable cause to search my client's apartment, but unfortunately, because of the misstatements of Officer Wengard, the fact that there was no probable cause was concealed from the issuing judge, who then issued the warrant, not knowing that probable cause had not been established. Officer Wengard concealed the true facts of this case from the issuing judge. Officer Wengard knew that he had not seen the C.S. enter the apartment building. He knew that no officer had seen the C.S. enter the apartment building, yet notwithstanding that knowledge, he represented to the issuing judge that the C.S. was under constant surveillance throughout the entire district controlled by. Officer Wengard compounded that misrepresentation by his further representations that there were quote-unquote surveillance units in the area. Your Honors, as your Honors know, Officer Wengard testified in front of the district court that what he meant by surveillance units was not actually surveillance. Nobody was actually surveilling the apartment. In fact, surveillance units were only backup that were in the area and could not see the C.S. In addition to Officer Wengard's misrepresentations about what he and any other officer actually saw that day, Officer Wengard made misrepresentations whenever he represented to the court that he quote-unquote searched the C.S. Now, Officer Wengard did testify for the district court that a search was performed, Your Honors, but the search that was performed by Officer Wengard and Officer Barksdale was not sufficient to eliminate the possibility that the C.S. was secreting drugs or contraband or money of any kind to the area in front of my client's apartment and then switching those out for the money. Let me restate that. Officer Barksdale testified that a bundle of heroin is approximately eighth of an inch. That's the size of a piece of Trident gum, Your Honors. Officer Wengard and Officer Barksdale both testified that the search consisted of turning out your pockets and let me pat down your Carhartt coat. Moreover, I believe it was Officer Wengard testified that the whole search happened inside the vehicle. So the C.S. then would be sitting in the vehicle pulling out his front pockets. We've still presumably got back pockets. The only other place that Officer Wengard searched was the rim of the C.S.'s shoe. Now, Your Honor, is the theory that the informant planned to set up Mr. Pfeiffer by anticipating that the search would not be as thorough as possible, therefore secreted a few bindles of heroin somewhere into his shoe or where it might not be found, if the officers didn't conduct a very thorough search, then he sort of snuck down, hid behind the wall, never actually knocked on the door? That's the theory? That's exactly right, Your Honors. Can you address the fact that what we're talking about is probable cause rather than proof beyond a shadow of a doubt? Absolutely, Judge. Probable cause, the officer had to have something other than just let me back up. The officer represented... The scenario I'm Yes, I agree. I agree. I think there's no way to know that that's not what happened. And that's exactly our point. That's exactly our point. In Bell, this court pointed out that one of its concerns was that you didn't know enough about the C.S. and you didn't know enough about that relationship of the C.S. to the defendant to know whether or not the C.S. would do exactly what Your Honor has just described. That's exactly our point. That's been our issue throughout this case. It's been our issue throughout this case. It is troubling that the officer was comfortable enough making these misrepresentations to the court, but it is equally troubling that he didn't provide any more information about that C.S. Your brief raises a number of issues. I wonder if I might just ask briefly about one of them or a couple of them rather. As I understand federal rule of criminal procedure 41E, if a federal search warrant is issued to seize certain devices, is there any similar rule under Illinois law since this was a state search warrant? If there is, I did not come across it. Is that unreasonable? We're not talking about that if a search warrant to seize computers, tablets, phones, and so on includes an implicit or understood power to search their contents. I do think it's unreasonable, and I believe that it was the Riley v. California case. There's no warrant in Riley at all. It's just seizure incident to arrest. That's correct, but I think that in that Riley case, I think the court was, in my reading, was making it even broader than that. The court recognized in that case there was no warrant, but the court was saying also it said even though there was no warrant, we still think this was necessary. I believe the court in that case was pointing toward there was an additional requirement. In fact, Lieutenant Lawson, I believe it was, even testified during the trial that it was his belief he should have obtained a warrant to further search those devices. So it's not like the officer thought, well, I can just do this, and that's lawful. The officer testified, no, I should have got another warrant. I just didn't. One of your other arguments is that the district judge erred by excluding certain evidence about Mr. Pfeiffer's purpose in combining sex and videotapes with this young girl. I was trying to understand from your brief what evidence was kept out and what offer of proof was made in the district court. I believe we had a motion in Lemonnier, Your Honor, and as part of that motion there were several attachments of correspondence that was written and additionally our witness list. These are the letters from C.T. to Mr. Pfeiffer in jail? There were letters from C.T. to Mr. Pfeiffer. I can't remember, Your Honor. I believe there were also letters from other individuals. We had a... Well, you're telling us that whatever this is is so powerful that it was reversible error to exclude it. I have no idea why that would be the case. Because he was not... The government put on a massive amount of evidence. Many photos were admitted and all we were asking, Your Honor, was that we be allowed to put on a few witnesses. I think we had four or five witnesses. What were they going to say? They were going to testify as to the relationship between Mr. Pfeiffer and C.T. because it was our theory that Mr. Pfeiffer and C.T. would have had sexual relations regardless of whether there were electronic devices there to record these things. What were they going to say? Did he confer with them about his plans? They were largely regarding just their knowledge of the relationship to show the jury that it's not just my client that was saying this. It was, in fact, something that other people had seen. Would their knowledge include the fact that she was 15? It would have. And, in fact, I think some of them even would have testified that Mr. Pfeiffer was not aware that she was 15 had he been permitted to put on a witness. The others, they knew, though. Did they know? The people that wrote letters. Yes, sir. Yes, sir. So he's the one that says he doesn't know. Yes, sir. I think, and I don't want to misrepresent the letters, I think those were actual interviews with an investigator that we had. They may not have been the actual letters. It was the interviews and then the statement from that investigator. You thought they were sufficiently favorable where you'd want to admit them? Yes, sir. If there are no other questions, I'll wait for rebuttal. Thank you, Counsel. Mr. Childress. May it please the Court, Ms. Mayo. John Childress on behalf of the United States. With the Court's permission, I'll first move to the suppression issue as it was addressed by both the Court and opposing Counsel. As the Court has noted, the issue here is not whether the sale of heroin occurred beyond a shadow of a doubt, but whether probable cause was established. Significantly probable cause requires the probability or substantial chance of criminal activity. On November 6th and November 13th of 2013, the confidential informant purchased heroin from the defendant at the defendant's apartment. He was first searched. He then called the defendant to arrange the transaction. He was then driven to the defendant's apartment. As he arrived, he walked up a sidewalk approximately 50 feet in view of law enforcement and landed on a cement landing. He then turned right and descended stairs. Significantly, Your Honors, at the base of those stairs was only the defendant's apartment, apartment number 5. He was out of the view of Officer Wangard for approximately a minute before he re-ascended the stairs and then walked back to the law enforcement vehicle. Ms. Mayo and the defendant placed significant emphasis on the words kept under constant surveillance. That term was indeed in the affidavit. However, to accept the argument that probable cause was not established, this court must ignore the rest of the affidavit. Throughout that affidavit, Officer Wangard makes clear that indeed the confidential source was outside the presence of law enforcement at specific times. Specifically, the affidavit notes that the confidential source exited the vehicle, therefore leaving the presence of law enforcement. The affidavit notes that the confidential source made entry and remained one minute in the defendant's apartment. Again, obviously outside the presence of law enforcement. And finally, the affidavit notes that the confidential source told law enforcement that Pfeiffer gave him on each occasion $50 for the heroin, reciting events, again obviously outside the presence of law enforcement. Mr. Childress, could you answer my question about whether Illinois does what the Federal Rule 41 does with respect to devices? Your Honor, to the best of my ability, the answer I believe is yes. I cannot cite you a statute and I apologize for that. However, I would like to expand on that if I could just a little bit. First, Your Honor, the electronic devices and the search of those devices fell within the ambit of the warrant. I think it's significant to note that the complaint sought the seizure specifically, the complaint for the search warrant, sought the seizure specifically of cell phones and computers. The warrant likewise, as the Court has noted, allowed the search of those cell phones and computers. And as the District Court pointed out, the affidavit for the search warrant noted that the confidential source had had contact with the defendant by phone, that an officer's Wangard's investigatory experience, financial records and residency records were often accompanied in drug transactions. And I think it's also a reasonable assumption that in this day and age, those types of records are sometimes maintained on electronic devices. By drug dealers? Yes, sir. By drug dealers. Text messages? Quicken programs for their accounts? Unlikely it's that sophisticated, Your Honor, but I think some evidence is often retained electronically. It's pretty common for a search warrant to authorize seizure of a container, right? Yes, sir. A suitcase, a briefcase. That's usually understood as authorizing a search of the contents, correct? And the District Court likewise had that understanding, Your Honor. Yes, sir. Could you address briefly the District Judge's change in position on the evidence of the prior conviction admitted under Rule 414 of the Rules of Evidence? Happy to, sir. As I understand it, the judge said that some testimony from the defendant changed her mind, and I wasn't clear whether there was anything that might have surprised the judge. Yes, sir. As the Court is aware, the defendant was previously convicted of aggravated criminal sexual abuse in a 2008 estate case. The government sought to introduce that evidence pursuant to that. The Court ruled prior to trial that while the evidence was permissibly admitted under 414, it was excludable under Rule 403 because the District Court deemed the prejudicial value outweighed the probative value. At trial, the defendant testified, among other things, that his intent in creating visual depictions of his sexual activity with his minor victim was to build a relationship. At that time, in contrast to the government's theory of the case, that his purpose, at least one of his purposes, was his interest in having sex with minor children. At that time, the government renewed its motion to introduce the prior conviction, and the District Court ruled, and I think properly so, because the defendant had invited contradiction by his own testimony as to his intent behind his behavior, that it was now more probative than not, and it was admitted. Before going in, the officer, when they get a warrant, they do background. Yes, sir. And he testified that he did know, going in, that he was a sex offender, a registered sex offender. Yes, sir. In point of fact, that information was known even prior to the execution of the search warrant. Officer Wangard, in one of the ways he corroborated the information provided by the confidential source, was he checked the address of the sale of heroin with the address that was registered to Mr. Pfeiffer pursuant to his sex offender registration. So that information was well known to law enforcement, and you're absolutely correct, Sergeant Lawson, prior to entering, who was in charge of the search of the apartment, knew that the defendant was a registered sex offender at that address. And there was some concern before going in that there was a possible relationship going on. I don't remember exactly what he said, but he thought that there was something about, I don't know whether it was a young person or whatever, but whatever it was, he had that in advance. Yes, sir. Just to be perfectly clear, the discovery of the minor victim half clothed and hiding under a bed was at the execution of the search warrant. You're correct. That information did make its way out to Sergeant Lawson prior to his entry and prior to the detailed search. But until the execution, that information was not known by law enforcement. Okay, I guess I misunderstood that. I thought that there was some concern about the possibility of some relationship, but maybe not until they found her. Not prior to the execution. That's correct, sir. Okay. Yes, sir. There was also, Your Honor's discussion about whether or not the probable cause was sufficient and the defense's theory that the confidential source might have secreted heroin on himself and set up Mr. Pfeiffer, essentially. The Court has noted that the evidentiary standard runs contrary to that argument, but I'd also like to point to this Court's decision earlier in Sidwell where the confidential source entered an apartment building with multiple units, made a purchase, and came back out. And this Court determined that that was sufficient to establish probable cause and that the possibility of interaction with any other unit was hypothetical. Even when contrasted with Sidwell, in this case, we have just one possibility of a purchase, that being the defendant's apartment at the bottom of the stairs. That was the only apartment that was available for entry where our confidential source went. And we have multiple purchases. In Sidwell, there was only one purchase. Here we have the two purchases occurring on the first floor of Sidwell. I'm happy to address any other questions that you might have with the remaining time I have. Seems not. Thank you, Mr. Childress. Thank you, sir. Anything further, Ms. Vick? Thank you, Judge. Just a few brief points. First of all, in Sidwell, one of the big differences is the officer in Sidwell did not try to hide the ball from the issuing judge. The officer in Sidwell was honest with the Court about what it knew and what he didn't know. And that's a huge difference than what we have in this case. In this case, the officer was dishonest or misrepresented the true facts of the case. The second thing, the government keeps representing Thank you, Ms. Vick. The Court appreciates your willingness to accept the appointment and your assistance to the Court as well as your client. The case is taken under advisement.